Richard R. Barker
Acting United States Attorney
Eastern District of Washington
Thomas J. Hanlon
Michael D. Murphy
Assistant United States Attorneys
402 E. Yakima Ave., Suite 210
Yakima, WA 98901
Telephone: (509) 454-4425

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO: 1:23-CR-02037-SAB-6 |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | PLAINTIFF'S SENTENCING MEMORANDUM |
| JAMAAL ANTWAN PIMMS, | ) ) ) | |
| Defendant. | ) ) | |

Plaintiff, United States of America, by and through Richard R. Barker, Acting United States Attorney for the Eastern District of Washington, and Thomas J. Hanlon and Michael D. Murphy, Assistant United States Attorneys, submit the following sentencing memorandum:

Government's Sentencing Memorandum         1

I.

BASE OFFENSE LEVEL AND ENHANCEMENTS

The United States agrees with the calculations contained in the Presentence Investigation Report. The Total Offense Level is 16, the Criminal History Category is I, and the advisory guideline range is 21-27 months. Pursuant to the terms of the plea agreement, the parties may recommend any legal term of incarceration.[1]

II.

DEPARTURES

The United States is not seeking a departure from the guideline range as determined by United States Probation. The United Staes is seeking an upward variance under the 18 U.S.C. § 3553 factors.

III.

SENTENCING FACTORS UNDER 18 U.S.C. §3553(a)

In determining the appropriate sentence, this Court should consider the factors as set forth in 18 U.S.C. § 3553(a).

1. <u>The nature and circumstances of the offense and the history and characteristics of Defendant.</u>

---

[1] ECF No. 267.

The current offense is serious. In the instant case, several people were at a residence located within the boundaries of the Yakama Nation. Drug addicts and drug dealers were known to visit and sleep at the residence. Individuals throughout the community knew the residence as the "House of Souls." This residence was in disrepair. The property was strewn with garbage and old appliances. On October 5, 2018, Rosenda Strong ("Strong") visited the residence. Her life tragically ended that day because she had a disagreement with Iesha Moreno ("Moreno.") Moreno and Strong exited the residence and walked into the backyard. Moreno pulled out a gun and murdered Strong. Multiple witnesses were present at the residence. The Defendant was the first to enter the backyard area and observe Strong's body on the ground. The Defendant placed a tarp over the body. Moreno entered a vehicle and departed from the location. The Defendant and Andrew Zack moved the body and stuffed it into an old freezer. The Defendant returned to his bedroom to get high. Zack and other males that were present disposed of Strong's body.

    The victim's family members were worried as they had no contact with the victim. On October 12, 2018, the victim's sister, Cissy Strong ("Cissy"), filed a missing persons report with the Yakama Nation Tribal Police. Just prior to the murder, Cissy had purchased a new phone for the victim. Cissy tried calling her sister. One on occasion, Cissy was surprised when the Defendant answered the

phone. Cissy asked for her sister. According to Cissy, the Defendant told her, "she's not here no more – stop looking for her" and hung up.[2]

In July 2019, the FBI learned that the Defendant was in the tribal jail. On July 18, 2019, two FBI agents traveled to the tribal jail and met with the Defendant. The Defendant advised that he anticipated such a meeting because there were a lot of rumors and that he wanted to make his point that he had nothing to do with it. The Defendant discussed his methamphetamine addiction. In regard to Strong, the Defendant advised that he had heard rumors. The Defendant advised that he saw Strong and Moreno walk out back. The Defendant advised he went into his room. The Defendant stated that he recalled that he thought he heard some rounds. The Defendant estimated that he heard three shots but advised he wasn't really paying attention. The Defendant believed that Moreno shot Strong in the rear of the House of Souls. The Defendant advised that after hearing the gunshots, he just "chilled" and "bumped music." The Defendant advised he was asked to help clean up, but he did not want to help. The Defendant stated that Moreno was armed and ordered him to help clean. The Defendant advised that he helped Moreno with a tarp and then went back to his room. The Defendant advised that he saw Strong's body on the ground. The Defendant stated that he handed Moreno a tarp and she covered up Strong. The Defendant stated that he told Moreno that

---

[2] Cissy advised the FBI of this conversation during an interview on October 25, 2018.

Government's Sentencing Memorandum            4

he had company and wanted nothing to do with it. He stated that Moreno told him to leave.

The agents asked the Defendant why he had Strong's phone. The Defendant stated that Strong's phone looked similar to his phone. He advised that phones went back and forth with everyone at the House of Souls. The Defendant advised that someone stole the phone from him. The Defendant had no recollection of Cissy calling him. The Defendant later advised that he did not answer a phone call from Cissy. During the interview, the Defendant advised the FBI agents of the identities of individuals that he saw at the House of Souls on the day Strong was murdered. However, the Defendant was unable to identify anyone involved in the crime other than Moreno.

On June 13, 2023, an Indictment was filed in this case. The Defendant was subsequently apprehended. On June 26, 2023, the Defendant agreed to participate in an interview. The Defendant advised that he had a good recollection of what had happened to Strong. Pimms recalled there had been an argument about a stolen gun. The Defendant advised that Zack told him to check on Moreno and Strong. The Defendant advised he saw Moreno walk into the house with a gun. The Defendant saw Strong on the ground behind the house. The Defendant stated that Moreno handed him a tarp and told him to cover up the body. The Defendant advised that he covered up the body. The Defendant stated he then went back into

the house to smoke. The Defendant advised that after smoking, he went outside and everyone was gone.

The Defendant described seeing Strong's body on the ground. The Defendant remembered telling Zack that Strong "was gone." The Defendant recalled that Zack got up to take a look. The Defendant advised that he saw Moreno driving away from the house. At the same time, the Defendant advised that Zack was concerned and didn't know what to do. The Defendant advised that Zack wanted to put Strong in a freezer. The Defendant stated he was scared and helped move the freezer closer to the body. The Defendant explained that they put the freezer on its side and rolled the body into the freezer. The Defendant went back into the house to smoke.

From October 5, 2018 to July 4, 2019, the victim's family did not know what happened to Strong or where she was located. This was an incredibly difficult time for the family. The family would hear rumors of what happened to Strong. Cissy desperately wanted to find out what happened to her sister. Presumably, the family held out some sense of hope that Strong would come home alive. However, they ultimately knew that she was gone forever.

The Federal Bureau of Investigation ("FBI") and the Yakama Nation Police Department ("YNPD") devoted several years to the instant investigation. Agents conducted numerous interviews in multiple states. Agents and police talked to

anyone and everyone who had any information about the disappearance of Strong. Agents and police followed up on every lead and every rumor, searched every location, and literally dug up the ground in various locations looking for Strong. The investigation continued after the discovery of Strong's body. The FBI and the YNPD wanted to ensure that this case would be solved.

There are some facts of this case that are undeniable. First, the government does not know why Moreno murdered Strong. However, the motivation for the murder really does not matter. The bottom line is that Strong, an unarmed young woman, was violently murdered. Second, none of the men in this case, including the Defendant, attempted to perform any type of lifesaving techniques. Nor did any of the men in this case even attempt to call an EMS to see if Strong's life could be saved. Third, none of the men in this case, including the Defendant, called the police to report the crime. Fourth, none of the men in this case, including the Defendant, were required to participate in the attempted cover-up of the murder. Defendant can be thought likely to have assisted due to his drug addiction. Fifth, no one involved in this case had the courage or compassion to let the Strong family know what had happened to Strong. Rather, they let the Strong family suffer for years. Here, as noted above, Cissy spoke to the Defendant on the phone. The Defendant failed to tell Cissy what had happened. The Defendant failed to tell Cissy what happened even after the death of Moreno. Lastly, the Defendant and

others involved would likely claim that they didn't report the crime due to fear of Moreno or Zack. However, Moreno was murdered two days after Strong was murdered. As such, no one could have feared any violence from Moreno. In July 2021, Zack was arrested on unrelated charges. Zack was detained on these charges. Yet, even after Zack's arrest, none of the men in this case called the police, and no one called the Strong family to provide them with some measure of closure. Rather, the Defendant and the others just moved on with their own lives and could have cared less about the Strong family. The Strong family had to suffer the extreme pain of not knowing who had murdered their loved one. All the Strong family knew was that someone tossed their loved one "out like garbage in a freezer."

The Defendant's criminal history is limited to primarily driving offenses. However, the Defendant has routinely failed to follow orders issued by the various courts resulting in the issuance of multiple warrants for his arrest.

2. <u>The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and to provide just punishment.</u>

The Defendant has demonstrated that he has no respect for humanity, the community, or the law. The United States submits that a sentence of 36 months imprisonment is required and is necessary to promote respect for the law, and to provide just punishment.

3. <u>The need for the sentence imposed to afford adequate deterrence to criminal conduct.</u>

The Defendant has served multiple minimal jail terms over the course of his adult life. The Defendant was previously provided with an opportunity to take advantage of a Stipulated Order of Continuance. However, the Defendant violated the terms of the agreement was sentenced to 15 days in jail. Prior terms of incarceration failed to deter the Defendant from engaging in criminal acts. The United States submits that a term of imprisonment is required.

4. <u>The need for the sentence imposed to protect the public from further crimes of Defendant.</u>

The Defendant is a danger to the community. The Defendant assisted in covering up a murder. Back in 2019, the Defendant could have called the police to report the offense. The Defendant could have called the Strong family and provided them with closure. However, the Defendant decided to protect his friends and did nothing. The Defendant never attempted to provide any aid to the victim, and never attempted to get help for the victim. Here, the only viable sentence is a term of imprisonment.

5. <u>The need for the sentence imposed to provide Defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

The Defendant appears to be in need of educational or vocational training.

## IV.

## GOVERNMENT'S SENTENCING RECOMMENDATION

Here, the government recommends that the Court impose a term of imprisonment of 36 months to be followed by a one year term of supervised release.

Respectfully submitted this 14th day of May 2025.

                                 Richard R. Barker
                                 Acting United States Attorney

                                 s\ Thomas J. Hanlon
                                 THOMAS J. HANLON
                                 Assistant United States Attorney

                                 s\ Michael D. Murphy
                                 MICHAEL D. MURPHY
                                 Assistant United States Attorney

I hereby certify that on May 14, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF which will send notification of such filing to the following: Counsel for Defendant.

s\ Thomas J. Hanlon
THOMAS J. HANLON
Assistant United States Attorney
United States Attorney's Office
402 E. Yakima Ave., Suite 210
Yakima, WA   98901
(509) 454-4425
Fax (509) 454-4435